**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Anthony W. FAISON, Defendant–**
**Appellant.**

**No. 99–1103.**

United States Court of Appeals,
· Seventh Circuit.

Argued Sept. 10, 1999

Decided Oct. 26, 1999

Richard N. Cox, Lawrence S. Beaumont (argued), Office of the U.S. Attorney, Urbana Division, Urbana, IL, for plaintiff–appellee.

Thomas W. Patton (argued), Office of the Federal Public Defender, Springfield, IL, for defendant–appellant.

Before FLAUM, MANION, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Anthony W. Faison appeals his conviction for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a), claiming that the district court erred in denying his motion to suppress evidence seized during a search of his tractor-trailer. Faison argues that the district court erroneously found that the search at issue was supported by probable cause. For the reasons set out below, we agree with the finding of the district court and affirm its decision.

## I. Facts

At about 12:10 a.m. on June 7, 1997, Trooper Gregory Dorsey stopped Anthony W. Faison, the defendant, for speeding on Interstate 57 in Kankakee County, Illinois. At the time of the stop, Faison was driving a tractor-trailer and was accompanied by a passenger. Trooper Dorsey approached the vehicle and asked Faison his intended destination. Faison responded that he was on his way to the Chicago area to lease his truck and services to a trucking company, but he could not be more specific. Faison could not provide the name of the trucking company, nor could he give an address. He was also unable to provide the name of a contact person at the company, or a letter of authorization for the passenger. In addition, the driver's license produced by Faison proved to be invalid.

During the course of the stop, Trooper Dorsey asked Faison for his logbooks and other paperwork that truck drivers are required to keep by law. Faison's logbooks showed that he had been driving in excess of the time truck drivers are legally permitted to operate their vehicles. Trooper Dorsey also requested that Faison produce a bill of lading for any cargo he had in the trailer. Faison responded that he did not have any such document because he was not carrying any cargo. The paperwork which Faison did provide was in a disorganized bundle, a fact that Trooper Dorsey found to be strange given the orderly way in which most truck drivers keep their papers ready for production.

As a result of the traffic stop, Trooper Dorsey issued the defendant citations for speeding, driving without a valid driver's license, failing to notify his employer of a license suspension or revocation, driving more than ten hours following eight consecutive hours of off-duty time, and transportation of an unauthorized person. Trooper Dorsey also issued Faison warnings for failing to visually inspect his tractor-trailer and for not having proper identification on his truck. While these citations and warnings were being completed, Faison sat with Trooper Dorsey in the police vehicle. During this time, Trooper Dorsey continued to question Faison about his trip and intended destination. Trooper Dorsey testified that Faison's answers seemed rehearsed and that Faison would not maintain direct eye contact.

After the citations had been issued, Trooper Dorsey asked Faison if he would open the door to his trailer. Faison consented and opened one of the doors. At that point Trooper Dorsey noticed several boxes inside, despite Faison's earlier assertion that he was not carrying any cargo. Trooper Dorsey testified that he also smelled a strong odor of bug repellent, which he stated is often used as a masking agent for the transportation of narcotics. Trooper Dorsey asked Faison about the boxes, but the defendant did not answer and appeared nervous to Trooper Dorsey. Trooper Dorsey then ordered Faison to back away from the truck, and proceeded to enter the trailer without Faison's consent.

Once inside the trailer, Trooper Dorsey noticed a strong smell of marijuana coming from the boxes. Trooper Dorsey slit one of the boxes open with a pocket knife and found several foil and cellophane-wrapped containers inside containing marijuana. Faison was immediately placed under arrest.

In the aftermath of the arrest, Trooper Dorsey wrote a report detailing the circumstances surrounding the search. That report contained no mention of Faison ever appearing nervous or failing to maintain eye contact. The report also failed to include the fact that Trooper Dorsey smelled bug repellent when the trailer door was opened, or that he smelled marijuana upon entering the trailer. Master Sergeant Robert Bodemer of the Illinois State Police did testify that Trooper Dorsey told him on the night of the stop that he smelled a masking agent when the trailer door was opened, although Master Sergeant Bodemer could not remember the specific odor Trooper Dorsey stated he had smelled.

The defendant was charged in a one-count indictment with possession of marijuana with intent to distribute. At trial, Faison filed a motion to suppress the marijuana discovered by Trooper Dorsey. In support of this motion, Faison argued that the search which led to the discovery of that evidence was unsupported by probable cause.

The district court rejected the motion to suppress, stating that it found Trooper Dorsey's testimony to be credible despite the fact that certain information was missing from his report. The court found that the totality of the circumstances surrounding the stop, including Faison's inability to state his destination, the missing and dis-

organized paperwork, the presence of an unauthorized person in the truck, the presence of unexplained boxes in the trailer, and the smell of the bug repellent, created probable cause for a search of the boxes. It is from this ruling that the defendant now appeals.

## II. Analysis

### A.

█ In reviewing the denial of a motion to suppress, the standard of review depends on the nature of the district court's findings. Findings of fact will be reviewed for clear error. *See United States v. Duguay,* 93 F.3d 346, 349–50 (7th Cir.1996). Mixed questions of law and fact, however, are subject to *de novo* review. *See Ornelas v. United States,* 517 U.S. 690, 696–97, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Duguay* at 350. Since defendant does not challenge the district court's factual findings, but rather only its finding that probable cause for the search did exist, we review that finding de novo. *See Ornelas,* 517 U.S. at 696–97, 116 S.Ct. 1657 (holding that determinations of probable cause and reasonable suspicion are subject to *de novo* review).

### B.

█ While it is always preferable that a warrant be obtained before a search is made, *see United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), there are circumstances in which the warrant requirement does not apply. *See id.* at 106–07, 85 S.Ct. 741 (noting that exceptions to the warrant requirement are limited and are recognized only when seizure without a warrant would not be possible). The search of an automobile is often such a circumstance. *See Arkansas v. Sanders,* 442 U.S. 753, 757, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Because of the inherent mobility of vehicles, and the lessened expectation of privacy the Supreme Court has recognized in them, the search of a vehicle is sometimes permissible even in the absence of a warrant. *See United States v. Chadwick,* 433 U.S. 1, 12–13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (holding the expectation of privacy in vehicles is diminished); *Carroll* at 153, 45 S.Ct. 280 (stressing a suspect's ability to move a motor vehicle before a warrant could be sought). The defendant does not contend that a warrant was necessary to justify the search in question. Even a warrantless search, however, must be justified by a showing of probable cause. *See United States v. Navarro,* 90 F.3d 1245, 1252 (7th Cir.1996). The legality of the search at issue here thus turns on a careful consideration of the adequacy of Trooper Dorsey's probable cause determination in light of the facts and circumstances of this case.

█ Probable cause exists where "the facts and circumstances within [the arresting officer's] knowledge ... [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting *Carroll,* 267 U.S. at 162, 45 S.Ct. 280). A finding of probable cause is based on probabilities, and need not rise to the level of a virtual certainty. *See Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In determining whether probable cause for a search exists, police officers may draw inferences based on their own experience. *See Ornelas,* 517 U.S. at 699, 116 S.Ct. 1657. When reviewing a probable cause determination, courts are to look to the totality of the circumstances surrounding the search and decide "each case ... on its own facts and circumstances." *Id.* at 1661; *see Gates,* 462 U.S. at 232, 103 S.Ct. 2317 ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts."). We are thus required to look closely at the specific facts and circum-

stances known to Trooper Dorsey at the time of the search.

 As the district court noted in its opinion, several aspects of this traffic stop justifiably raised suspicion in the eyes of Trooper Dorsey. The defendant's paperwork was not in order, a fact the district court found to be highly unusual. The defendant was also in violation of several regulations applicable to long-distance truck drivers, and he was unable to provide a specific destination. At various times during the course of the stop, the defendant appeared agitated. In addition, once the door to the trailer was voluntarily opened by the defendant, Trooper Dorsey noticed the smell of a substance commonly used as a masking agent in the transportation of narcotics, as well as the presence of several boxes which contradicted defendant's earlier assertion that he was carrying no cargo. Taken together, these facts are more than enough to justify Trooper Dorsey's subsequent entry into the trailer and search of the boxes.

Defendant does not contest the assertion that the circumstances of this search gave Trooper Dorsey reason to be suspicious; rather, he contends that the level of suspicion present did not rise to the level of probable cause. In support of this argument, defendant points to several cases where factors such as nervousness, incomplete travel plans, or the presence of masking odors gave rise to only an articulable suspicion. *See United States v. McRae*, 81 F.3d 1528 (10th Cir.1996) (finding articulable suspicion); *United States v. White*, 42 F.3d 457 (8th Cir.1994) (same); *United States v. Bloomfield*, 40 F.3d 910 (8th Cir.1994) (en banc) (same). None of the cited cases purport to establish a minimum standard for probable cause, however, nor do they indicate that the presence or absence of any one factor is determinative of the probable cause inquiry. Every probable cause determination is a fluid and highly contextual one, and each case must be resolved on its own particular facts. *See Ornelas* at 1661; *Gates* at 232, 103

S.Ct. 2317. In light of the facts surrounding the stop at issue here, Trooper Dorsey's actions appear reasonable. The search of defendant's tractor-trailer was supported by probable cause, and the district court properly denied the motion to suppress.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.